UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$85,704.00 IN U.S. CURRENCY,

    Defendant

Case No. _____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The plaintiff, United States of America, through its attorneys W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $85,704.00 in U.S. Currency for violations of 21 U.S.C. § 841 *et. seq.*

**THE DEFENDANT *IN REM***

2. The defendant *in rem* is $85,704.00 in U.S. Currency ("the Defendant Property") seized from Ryan Matthew Branstad on November 12, 2020. The Defendant Property is in the custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).  Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this District.

## FACTS

6. The Drug Enforcement Administration ("DEA") Task Force Group 72 has been investigating drug trafficking operations, including methamphetamine and bulk currency smuggling between Minnesota and Iowa.

7. On November 12, 2020, Minnesota State Trooper Jacob Ristau was on routine patrol along Interstate 35 near Albert Lea, Minnesota, when he was alerted that Matthew Branstad, who was known to be involved in drug trafficking and/or currency smuggling, was expected to be traveling north on Interstate 35 in a certain 2010 Dodge Ram 3500.

8. Trooper Ristau saw the vehicle and conducted a traffic stop after noticing a radar detector improperly attached to the middle of the windshield.

9. The Dodge Ram pickup truck pulled onto the right shoulder of the Interstate without incident.

10. Trooper Ristau identified Ryan Matthew Branstad as the driver. Branstad did not present his vehicle insurance information upon request, claiming the information was on his phone.

11. Trooper Ristau told Branstad that he had pulled him over for an obstruction of windshield violation and asked Branstad to join him back near his squad car while Branstad searched for his insurance information.

12. Branstad said that he was travelling to Cabela's in Owatonna, Minnesota, because he preferred Cabela's over Bass Pro Shop, which had a store in Mason City, which is where Branstad resides.

13. Branstad stated that he had been recently laid off from his job as a pipeline worker.

14. During their conversation, Trooper Ristau determined that Branstad was exhibiting signs of possible controlled substance use and asked him to perform Standardized Field and Sobriety Tests. Trooper Ristau determined that Branstad had shown signs of use but was not actively impaired.

15. During the traffic stop, Minnesota State Trooper David Hoffman arrived in a separate vehicle.

16. Trooper Ristau asked Branstad if there were any narcotics or large amounts of U.S. Currency in the truck. Branstad stated that there was not, but that he did not want the vehicle searched.

17. Trooper Ristau asked Branstad to stand with Trooper Hoffman. Trooper Ristau then returned to the Dodge Ram pickup and asked the passenger to exit the vehicle with her dog and also stand with Trooper Hoffman.

18. Trooper Ristau then retrieved his canine partner, Maty, from his vehicle. Canine Maty is nationally certified to detect the base odors and derivatives of Cocaine, Ecstasy, Heroin, Methamphetamine and Psilocybin.

19. Maty was led to circle the exterior of the Dodge Ram pickup. Maty alerted to the front driver's side wheel well and door. Trooper Ristau then deployed Maty into the interior of the vehicle, through the passenger side door because the driver's side was too close to the active lane of traffic.

20. Inside the vehicle, Maty again alerted in the area of the center console, but was unable to pinpoint the source.

21. Trooper Ristau returned Maty to his vehicle and informed Branstad and Skylee that a further search of the vehicle would then be conducted. Trooper Ristau asked Branstad again if there was anything in the truck that he needed to know about. Branstad then admitted that there was "quite a bit" of money in the truck, "in the backseat."

22. Trooper Ristau first searched the center console of the pickup truck, locating Branstad's wallet which contained a large amount of U.S. Currency banded together with

green and blue rubber bands, with mixed denominations of 20s, 50s and 100s. The money from the wallet was placed in an evidence bag and sealed.

23.     Trooper Ristau then located a duffel bag hidden under a dog bed under the backseat with a large quantity of U.S. Currency.

24.     There were seven bundles of U.S. Currency that were heat sealed in plastic wrap.

25.     Six of the packages were labeled with black permanent marker as "10,000" and one package was labeled with "20,000." Then money in the plastic wrap was banded together with green and blue rubber bands matching the bands on the money located in the center console.

26.     A closer look at the packages showed that the money appeared to be further separated into $1,000 increments with the last bill flipped.

27.     This style of packaging is consistent with illegal drug sales and illicit quick exchanges.

28.     Based on the information he had received that Branstad was involved in narcotics distribution and/or currency smuggling, the positive dog alert to the currency, the packaging of the large sum of currency in a manner consistent with its use in narcotics distribution, and Branstad's nervous behavior and signs of controlled substance use, Trooper Jacob Ristau seized $85,704.00 in U.S. Currency based upon probable cause that it was used or intended to be used in exchange for a controlled substance.

## BASIS FOR FORFEITURE

29. The allegations in the preceding paragraphs are realleged and incorporated by reference.

30. The defendant $85,704.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

31. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant in rem, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant in rem, that the Defendant in rem be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: 9-27-2021

W. ANDERS FOLK
Acting United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55412
Phone: 612-664-5600
Craig.baune@usdoj.gov

## VERIFICATION

I, Anthony J. Fletcher, verify and declare under penalty of perjury as follows:

I am a Special Agent with the Minnesota Bureau of Criminal Apprehension and assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), and have been since February 2016. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a DEA Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:  9-27-2021

*s/Anthony J. Fletcher*
ANTHONY J. FLETCHER
DEA Task Force Officer